John E. Sadler v. Commissioner.
Sadler v. Commissioner
Docket No. 3378.
United States Tax Court
1944 Tax Ct. Memo LEXIS 26; 3 T.C.M. (CCH) 1285; T.C.M. (RIA) 44389; November 30, 1944
*26 J. Alex Neely, Jr., Esq., Anderson,0S.C., for the petitioner. Edward L. Potter, Esq., for the respondent. TURNER Memorandum Opinion TURNER, Judge: The respondent has determined deficiencies in income tax against the petitioner for the years 1940 and 1941 in the respective amounts of $108.49 and $649.72. The petitioner concedes that the respondent's determination is correct in part for each year and contests only that portion of the said deficiencies which resulted from the determination that certain lots and parcels of land sold by the petitioner during the taxable years were not capital assets. No witnesses were called at the hearing, and the case was submitted upon the pleadings and facts agreed to and read into the record by counsel for the parties. The facts are found as so stipulated. [The Facts] The petitioner is a resident of Anderson County, South Carolina. "Prior to 1930 John E. Sadler was in the gasoline and oil business himself at Anderson, South Carolina. He also owned and rented filling stations and storerooms for operation and occupation by others. In the year 1930 he sold a major part of his oil business and retired. During the years 1940 and 1941 he owned *27 some stores and filling stations from which he received rental income. "In the year 1924 the petitioner purchased five separate but adjoining parcels of land in one trade from John Frank, a real estate agent, aggregating approximately 40 acres, located practically adjoining the city limits of Anderson, South Carolina. During the period 1924 to 1939 this land was farmed by a Negro tenant. In 1940, in order to obtain a greater profit from the sale of this land, the entire acreage, after selling off seven acres, was laid out as a subdivision into 72 lots. Streets were cut and improvements were installed. The petitioner made an agreement with L. H. Horton, a licensed real estate agent, to sell the lots in the subdivision. During the year 1940 seven sales, consisting of 12 lots, were made to various individuals upon which were realized a total profit of $696.56. In 1941 five parcels consisting of seven lots of the subdivision were sold at a net profit of $1,661.10, and top soil from 11 acres was sold at a net profit of $504.33. "In 1932 the petitioner purchased a farm consisting of 138.2 acres several miles from Anderson, South Carolina. During the taxable year 1940, 52.4 acres were *28 sold from this farm for $1,000, to which is allocated a cost of $524, thus realizing a profit of $476. During the year 1941 the remainder of the farm, to-wit, 85.8 acres were sold at a price of $1,716.00, to which is allocated a cost of $710.15, thus realizing a profit of $1,005.85. "Petitioner was not a licensed real estate agent during either of the years 1940 and 1941, nor at any other time. All sales were made through L. H. Horton, a licensed real estate agent. "During the years 1940 and 1941 petitioner did not actively engage in any business because of illness. He suffered from high blood pressure. "The deficiency asserted in the 90-day letter is computed by respondent upon 100 per cent of the net profits received from the sale of all of the land and top soil sold in the respective years 1940 and 1941." On the date of the hearing, September 20, 1944, the petitioner was 65 to 70 years old. The petitioner reported the gain realized in 1940 and 1941 from the sale of the above lots and parcels of real estate as capital gain. The respondent has determined that the lots and parcels of real estate, when sold, were not capital assets within the meaning of section 117(a)(1) of the *29 Internal Revenue Code, [1] and that the gain realized from the sale thereof is taxable to the petitioner as ordinary gain. The case turns on the applicability of that part of section 117(a)(1) which specifically excludes "property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business" from the category of "capital assets". No claim is made that the petitioner did not, in the taxable years, hold the said lots and other parcels of real estate "primarily for sale to customers," *30 but counsel for the petitioner does argue that the said properties were not held by the petitioner primarily for sale to customers "in the ordinary course of his trade or business." In support of that argument, he notes particularly the petitioner's age and health in the taxable years; the fact that petitioner had disposed of his oil business some ten years before, and further, that petitioner was not a real estate agent, had no license to sell real estate, but had an arrangement with a real estate agent to make the sales for him, the tenor of the argument being that the sales were merely steps in the liquidation of petitioner's investment in the properties, and the lots and other parcels of real estate were not therefore sold in the ordinary course of petitioner's trade or business. It is true that the sales in question were steps in the liquidation of the petitioner's investment in the particular properties involved, but where the operation is that of subdividing and selling real estate, the liquidation test has been rejected in determining whether or not the taxpayer is carrying on a trade or business within the meaning of section 117(a)(1), supra. Ehrman v. Commissioner, 120 F.2d 607, *31 certioari denied, 314 U.S. 668; Richards v. Commissioner, 81 F.2d 369. Neither does it follow that the petitioner was not engaged in the business of selling lots because he did not make the sales personally, but had an arrangement with a real estate agent to do the selling for him. James Lewis Caldwell McFaddin et al., 2 T.C. 395. See also Ehrman v. Commissioner, supra, and Richards v. Commissioner, supra, wherein the sales were made through agents, on a commission basis. The operation here was more than the casual selling of pieces of investment property. The property adjoining the city limits of Anderson was subdivided into 72 lots, streets were cut, and improvements installed - all for the purpose of entering upon the venture of selling the lots at a greater price than the property would have brought under other circumstances. The other property, while not subdivided into lots, was brought into the real estate venture and sold in two parcels. It is our conclusion and we hold that the petitioner, during the taxable years, *32 held the lots and parcels of real estate primarily for sale to customers in the ordinary course of his trade or business, and that they were not therefore capital assets within the meaning of section 117(a)(1), supra. See and compare C. W. Oliver v. Commissioner, 138 F.2d 910. Decision will be entered for the respondent. Footnotes
1. SEC. 117. CAPITAL GAINS AND LOSSES. (a) Definitions. - As used in this chapter - (1) Capital Assets. - The term "capital assets" means property held by the taxpayer (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business, or property, used in the trade or business, of a character which is subject to the allowance for depreciation provided in section 23 (1);↩